## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **PHYLLIS S. MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIV-16-**1010-W |
| | ) | |
| 1. **AMERICAN CANCER** | ) | |
| **SOCIETY, INC.,** | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | ) | **ATTORNEY LIEN CLAIMED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Phyllis S. Moore, and for her Complaint against the Defendant alleges and states as follows:

## PARTIES

1.      Plaintiff, Phyllis S. Moore, is an adult female resident of Oklahoma County, Oklahoma.

2.      The Defendant is American Cancer Society, Inc., an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.      This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on age discrimination, harassment, the creation of a hostile work environment, and retaliation  in violation of  the Age Discrimination in Employment Act ("ADEA") and retaliation for her complaints of the same in violation of 42 U.S.C. §2000e-3.

4.      Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.

5.      Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity

1

Commission ("EEOC") on or about June 3, 2016. Plaintiff has received her Dismissal and Notice of Rights letter from the EEOC and has timely filed this action within ninety (90) days of receipt of her notice of right to sue.

6.     The Defendant is located in Oklahoma County and all acts complained of occurred in or around Oklahoma County. Oklahoma County is located within the Western District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7.     Plaintiff was born in 1961, making her over age 40 at all times relevant hereto.

8.     She began her employment with Defendant as a Senior Data Capture Associate - Patient Information on or about January 6, 2014. She was hired by then-Director of Donations and Data Processing Gary Keys.

9.     Throughout Plaintiff's employment, her job performance was at least satisfactory. In fact, Supervisor Nancy McClellan gave Plaintiff a positive 2014 performance evaluation, which was approved by Data Capture Manager Mike Pavao on or about February 23, 2015. And, Plaintiff received a merit increase on or about April 6, 2015. Plaintiff also received positive performance reviews from Supervisor Karla Berry.

10.     Despite this, Plaintiff was terminated from her employment on or about April 15, 2016 at age 54. The proffered reason for termination was that Plaintiff's accuracy percentage had not shown significant improvement. However, such reason was false and merely pretext for unlawful discrimination due to Plaintiff's age and in retaliation for Plaintiff's complaints of age discrimination and ageist comments.

11.     Particularly, on or about April 6, 2015, Plaintiff began reporting to a new supervisor, Stephanie Glispie (formerly Ziegler).

12.   In or around early September 2015, Plaintiff reminded Glispie of Plaintiff's upcoming time off to visit her daughter.  Plaintiff's daughter lived out-of-state and was preparing to give birth to Plaintiff's grandchild.  Plaintiff mentioned to Glispie that Plaintiff would be making child care arrangements for Plaintiff's other daughter (who is eleven (11) years old) while she was gone.  Upon discovering that Plaintiff (at the age of 53) had a child young enough to require child care, Glispie appeared disgusted and stated "I can't believe you have a child!" Plaintiff was highly offended by Glispie's statement and demeanor while making such statement.

13.   Shortly thereafter, on or about October 7, 2015, Glispie told Plaintiff that, due to her accuracy allegedly falling below 95% (to 94.84%), Plaintiff would be assigned a specialist to work on her accuracy.  Such assistance occurred on or about October 13 and 14, 2015.  Through this process, Plaintiff identified two (2) issues wherein the method she was trained to use was in conflict with written procedure.  A majority of the accuracy errors were based on these two issues and were easily resolved.  Plaintiff was able to correct her errors and modify her procedure to prevent such errors from occurring in the future.

14.   However, on or about October 14, 2015, Glispie told Plaintiff that her accuracy had allegedly fallen to 20%.  Glispie further chastised Plaintiff for refusing assistance from the specialist.  Plaintiff denied refusing the specialist's help, and told Glispie that she had identified and resolved the accuracy errors noted on October 7, 2015 with the specialist's assistance.  Glispie responded that this was very serious, and that Plaintiff should "care about the patients" and not place them at risk of not receiving services due to accuracy errors.  However, Glispie did not show or explain to Plaintiff how her accuracy had allegedly fallen to 20% or what errors Plaintiff allegedly committed.

15.   Thereafter, Plaintiff was told by Glispie that she would no longer be eligible

to work overtime because of her low accuracy percentage.  Glispie indicated that the availability of overtime was discretionary and could be denied based on job performance. Plaintiff told Glispie that there was no way to definitively determine whether the accuracy errors Glispie cited were Plaintiff's responsibility or another employee.  For instance, Plaintiff advised Glispie that multiple Data Capture Associates could access the same file on Defendant's file storage system.  If another associate accessed the file while Plaintiff was entering information, or vice versa, Plaintiff's entries were not saved in the file, resulting in the accuracy error.

16.    Initially, Glispie denied that it was possible for multiple associates to access one file simultaneously.  Thereafter, Glispie claimed that Plaintiff was the last person to exit the file, thus, it must be Plaintiff who committed the errors.  However, regardless of whether Plaintiff was the last person to exit the file or not, multiple users accessing the file could result in Plaintiff's information being lost or modified without Plaintiff's knowledge.

17.    And, although Plaintiff's accuracy improved, Glispie's nit-picking of Plaintiff continued.  On many occasions, Glispie made comments such as "I know you're confused, this is what happens when you get older, just slow down and concentrate," or words to that effect.  Such comments were incredibly demeaning.  And, other co-workers heard such comments and asked Plaintiff about the comments.

18.    Therefore, in or around early January 2016, Plaintiff met with Pavao regarding Glispie's ageist comments (as outlined above) and disgusted reaction to her discovery that Plaintiff had a young child.  Plaintiff told Pavao she was highly offended and demoralized by such comments.  Plaintiff further reported her belief that she was being singled out on the accuracy issue due to her age.

19.    In response, Pavao stated that he did not think Glispie meant anything by her

4

statements regarding Plaintiff's age.  Pavao gave no indication that he would look any further into Plaintiff's age discrimination complaint.

20.     During her meeting with Pavao, Plaintiff asked whether she could be removed from Glispie's supervision, as other employees were permitted to make such a move.  Pavao denied Plaintiff's request with no explanation.

21.     In or around January 2016, Plaintiff received an email from Glispie congratulating her for a perfect accuracy audit.

22.     Despite her improvement, on or about February 24 and March 23, 2016, Plaintiff was written up by Glispie for alleged low accuracy occurring from October 2015 through February 2016.  On each occasion, Plaintiff again told Glispie that the file storage system allowed multiple associates to modify the file at the same time, resulting in inaccurate entries.  Plaintiff further noted that she corrected all of her accuracy errors when she discovered a discrepancy.  Regardless, she was disciplined.  And, Glispie offered no solution to the multiple users issue.

23.     On or about April 15, 2016, Plaintiff was notified of her termination by Pavao. The alleged reason for termination was that Plaintiff failed to show consistent improvement with her accuracy.  However, as shown herein, this reason was merely pretext for unlawful discrimination due to Plaintiff's age and in retaliation for her complaints of the same.

24.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I:  ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

25.     The matters alleged above constitute violations of the ADEA in the form of age

discrimination, harassment, creation of a hostile work environment and retaliation.

26.     Plaintiff is entitled to relief because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was discharged, and her position was not eliminated after her termination.

27.     Plaintiff is further entitled to relief because she engaged in protected activity, suffered an adverse employment action by being fired, *inter alia*, and a causal connection exists between Plaintiff's protected activity and her subsequent termination.

28.     Moreover, Plaintiff is entitled to relief for age-based harassment and hostile work environment, as looking at the totality of the circumstances, Plaintiff was subject to harassment which was pervasive or severe enough to alter the terms, conditions or privileges of her employment, and the harassment was age-based or stemmed from age-based animus.

29.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based upon Defendant's willful misconduct.

## COUNT II - 42 U.S.C. § 2000e-3

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

30.     The matters alleged above constitute a violation of Title VII of the Civil Rights Act of 1964 for retaliating against Plaintiff for opposing discriminatory practices within the workplace.

31.     Plaintiff is entitled to relief because she engaged in protected activity, suffered an adverse employment action by being fired, *inter alia*, and a causal connection exists between Plaintiff's protected activity and her subsequent termination.

32.     As damages, Plaintiff has suffered lost earnings, past and future, emotional

distress and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in favor of the Plaintiff and against Defendant and award compensatory damages, punitive damages, liquidated damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

Respectfully submitted this 31st day of August, 2016.

s/ Jana B. Leonard
**JANA B. LEONARD, OBA # 17844**
**LAUREN W. JOHNSTON, OBA # 22341**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**johnston@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**